UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GUOPING GU,
on behalf of himself and others similarly situated,[1]

                        Plaintiff,                  **REPORT AND**
                                                        **RECOMMENDATION**

              -against-                        CV 18-6614 (PKC)(AYS)

LEMONLEAF THAI RESTAURANT MINEOLA
CORPORATION,
LEMONLEAF THAI RESTAURANT, INC,
JIN HUI HE, and
XIAO MING LIN,

                         Defendants.
----------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

       Before the Court, on referral from the Honorable Pamela K. Chen for Report and

Recommendation, is Plaintiff Guoping Gu's ("Plaintiff" or "Gu") motion for default judgment,

pursuant to Federal Rule of Civil Procedure 55. (Docket Entry ("DE") [62].) By way of a

Complaint filed on November 19, 2018, Plaintiff commenced this action against Defendants

Lemonleaf Thai Restaurant Mineola Corporation ("Lemonleaf Mineola"), doing business as

Lemon Leaf Thai Restaurant, Jin Hui He ("He"), and Heng Lin, pursuant to the Fair Labor

Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law ("NYLL"),

alleging that Defendants failed to pay him minimum wage, failed to pay him overtime

compensation for all hours worked in excess of forty hours per week, failed to provide him

spread of hours compensation, failed to provide him with a wage notice at the time of hiring, and

failed to provide him with accurate and complete wage statements with his weekly paychecks.

---

[1] While Plaintiff originally commenced this action as a putative collective action, which was
conditionally certified by Order dated November 13, 2019, (Docket Entry [27]), it does not
appear that any other plaintiffs opted into this action.

(Compl., DE [1].) With Defendants' consent, Plaintiff amended his Complaint on June 22, 2021, to add Lemonleaf Thai Restaurant, Inc. and Xiao Ming Lin as defendants and to remove Heng Lin as a defendant. (Am. Compl., DE [33].) This Court will refer to Lemonleaf Mineola, He and Lin collectively as "Defendants."

While all Defendants initially appeared through counsel in this action, by Order dated December 8, 2023, the District Court granted Defendants' counsel's motion to withdraw from further representation of Defendants. (Order of Chen, J., dated Dec. 8, 2023.) Defendants were afforded until January 31, 2024 to obtain new counsel. (Id.) The District Court advised Defendants that if an attorney did not enter an appearance by January 31, 2024, Plaintiff would be permitted to seek a default judgment. (Id.)

New counsel failed to appear for Defendants, and, on February 27, 2024, the Clerk of the Court entered a notation of default against Lemonleaf Mineola, He and Lin. (DE [61].) On February 28, 2024, Plaintiff filed the within motion for default judgment, (DE [62]), along with a separate motion for attorney's fees, (DE [65]), both of which Judge Chen referred to this Court for a recommendation as to whether they should be granted and the appropriate amount of damages, costs and fees, if any, to be awarded. (Order of Chen, J., dated Feb. 29, 2024.) For the following reasons, this Court respectfully recommends that Plaintiff's motion for default judgment be granted in part and denied in part, his motion for attorney's fees be granted, and that damages be awarded as set forth herein.

<u>BACKGROUND</u>

Plaintiff, a former employee of Defendants, was employed as a deliveryman for Lemonleaf Mineola from approximately June 1, 2014 until on or about October 8, 2018. (Am. Compl. ¶ 41; Gu Aff. ¶ 3.) Defendant Lemonleaf Mineola is a domestic corporation that operates

a restaurant under the name of Lemonleaf Thai Restaurant, located in Mineola, New York. (Am. Compl. ¶¶ 8-10.) Defendant He is a co-owner and operator of Lemonleaf Mineola. (Id. ¶ 20; Gu Aff. ¶ 4.) He is responsible for the daily operations of Lemonleaf Mineola, including determining employees' salaries and the number of hours they work. (Am. Compl. ¶¶ 20-23; Gu Aff. ¶ 5-6.) Defendant Lin is also a co-owner and operator of Lemonleaf Mineola. (Am. Compl. ¶ 25; Gu Aff. ¶ 7.) Lin is also responsible for the daily operations of Lemonleaf Mineola, including the payment of wages to Plaintiff and the determination of his employment schedule. (Am. Compl. ¶¶ 25-28; Gu Aff. ¶¶ 9-10.)

From approximately June 1, 2014 through August 17, 2016 of his employment with Defendants, Plaintiff typically worked one day per week, for approximately ten hours per day. (Am. Compl. ¶ 42; Gu Aff. ¶ 11.) Plaintiff generally worked from 12:00 p.m. to 10:00 p.m., without any break for meals. (Am. Compl. ¶ 42; Gu Aff. ¶¶ 11, 13.) From approximately August 18, 2016 through October 8, 2018 of his employment, Plaintiff typically worked six days per week as follows: eleven hours per day for four days per week and twelve hours per day for two days per week. (Am. Compl. ¶ 43; Gu Aff. ¶ 12.) Plaintiff generally worked from 11:00 a.m. to 10:00 p.m. four days per week and from 11:00 a.m. to 11:00 p.m. two days per week. (Am. Compl. ¶ 43; Gu Aff. ¶ 12.) Plaintiff routinely worked sixty-eight hours per week for Defendants during this time and, again, was not afforded any break for meals during his shifts. (Am. Compl. ¶ 43; Gu Aff. ¶¶ 12-13.) While the restaurant provided both lunch and dinner to Plaintiff, he was only afforded approximately ten minutes to eat and was still considered "on call," such that if a customer placed an order, his break ceased and he would be required to deliver the order. (Am. Compl. ¶¶ 45-46; Gu Aff. ¶ 14.)

From approximately June 1, 2014 to August 17, 2016, Plaintiff was paid a fixed daily wage of $80.00, regardless of the number of hours he worked each day. (Am. Compl. ¶ 47; Gu Aff. ¶ 15.) From August 18, 2016 to October 8, 2016, Plaintiff was paid a fixed monthly wage of $1,800.00, regardless of the number of hours he worked each week. (Am. Compl. ¶ 48; Gu Aff. ¶ 16.) Defendants did not provide Plaintiff with a notice and acknowledgement of his wage rate upon his hire. (Am. Compl. ¶ 52; Gu Aff. ¶ 19.) Similarly, Defendants did not provide Plaintiff with accurate wage statements each pay period. (Am. Compl. ¶ 52; Gu Aff. ¶ 19.) Plaintiff was never provided any pay stubs during his employment. (Gu Aff. ¶ 30.)

Plaintiff commenced the within action on November 19, 2018, alleging violations of the FLSA and the NYLL. Plaintiff seeks unpaid minimum and overtime wages pursuant to both statutes. Plaintiff also seeks unpaid spread of hours compensation pursuant to the NYLL. Finally, Plaintiff asserts claims pursuant to Sections 195(1) and 195(3) of the NYLL for Defendants' failure to provide him with written wage notices and written wage statements, as required by the statute. Plaintiff seeks damages in the amount of $196,383.58, as well as attorney's fees in the amount of $54,050.50 and costs in the amount of $2,311.90, for a total damages application of $252,745.98, plus interest. (Damages Calculations, DE [63-5]; Proposed Judgment, DE [63-4].)

<u>DISCUSSION</u>

I.    <u>Legal Standard</u>

A.    <u>Standard for Entering a Judgment of Default</u>

Rule 55 of the Federal Rules of Civil Procedure employs a two-step process before entering a judgment of default against a party that fails to respond or defend. <u>See</u> Fed. R. Civ. P. 55; <u>see also</u> <u>Romero v. Floris Constr., Inc.</u>, No. 1:16-CV-4282, 2017 WL 5592681, at *2 (E.D.N.Y. Nov. 20, 2017). First, the party seeking a judgment of default must ascertain a

certificate of default from the Clerk of the Court. See Fed. R. Civ. P. 55(a). After the Clerk issues

a certificate, the moving party then requests an entry of a judgment of default. See id. at 55(b);

see also Coley v. Vannguard Urban Improvement Ass'n, Inc., No. 12-CV-5565, 2018 WL

1513628, at *2 (E.D.N.Y. Mar. 27, 2018), as amended (Mar. 29, 2018). All of the well-pleaded

factual allegations in the complaint pertaining to liability are deemed to be true. See Qiu Hua

Tan v. Voyage Express Inc., No. 15 CV 6202, 2017 WL 2334969, at *2 (E.D.N.Y. May 25,

2017) (citing Greyhound Exhibitgroup v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (E.D.N.Y.

1992)). However, it is up to the court to determine whether the unchallenged facts constitute a

legitimate cause of action. See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y.

2012).

    B.    <u>Standard Required Under the FLSA</u>

        In order to establish liability under the FLSA, the plaintiff must prove either

individual liability or enterprise liability. See Leon v. Chen, No. 16-CV-480, 2017 WL 1184149,

at *4 (E.D.N.Y. Mar. 29, 2017). Individual liability applies to any individual "engaged directly

in interstate commerce or in the production of goods for interstate commerce." Coley, 2018 WL

1513628, at *3 (quoting Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 295 n.8

(1985)). On the other hand, enterprise liability applies to entities that: "(1) perform related

activities "for a common business purpose"; (2) have "employees engaged in commerce or in the

production of goods for commerce, or . . . employees handling, selling, or otherwise working on

goods or materials that have been moved in or produced for commerce by any person"; and (3)

have an "annual gross volume of sales made or business done [ ] not less than $500,000." Coley,

2018 WL 1513628, at *3 (quoting 29 U.S.C. § 203(r)–(s)) (alteration in original).

An employee is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Here, Plaintiff demonstrates this by alleging in his Amended Complaint that he is employed by Defendants. See Garcia v. Badyna, No. 13-CV-4021, 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014) (stating that since plaintiff alleged in his complaint that he is an employee as defined by the FLSA, for purposes of the default, he qualifies as an employee); see also Am. Compl. ¶ 7.

Furthermore, Plaintiff has shown in the Amended Complaint that Lemonleaf Mineola is an enterprise engaged in interstate commerce and has employees handling, selling or otherwise working on goods or materials that have been moved in or produced in commerce. See 29 U.S.C. § 203(s)(1)(A)(i)-(ii); see also Am. Compl. ¶¶ 8-10. In the course of his work, Plaintiff handled goods purchased by Defendants that originated outside the State of New York and were moved in interstate commerce, such as food ingredients and alcoholic beverages. See Am. Compl. ¶ 10. Plaintiff has also alleged in the Amended Complaint that Lemonleaf Mineola has an annual gross revenue of at least $500,000.00. See Am. Compl. ¶ 9.

Moreover, He and Lin are both employers under the FLSA. An employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(a). The Second Circuit has employed a multifactor test in determining whether one qualifies as an employer for purposes of liability. See Coley, 2018 WL 1513628, at *4. These factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8 (2d Cir. 1984)). In this case, both He and Lin hired and fired employees, set work schedules, and determined the rate of payment. See Am. Compl. ¶¶ 20-28. As a result, He and Lin are deemed to be employers under the FSLA.

C.   Standard Required Under the NYLL

The NYLL "is the state analogue to the federal FLSA," and, as such, it "echoes the FLSA in compensation provisions regarding overtime and minimum wage requirements." Rodriguez v. Ridge Pizza Inc., No. CV 16-0254, 2018 WL 1335358, at *7 (E.D.N.Y. Mar. 15, 2018) (quoting D'Arpa v. Runway Towing Corp., No. 12-CV-1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013)). As a result, once liability is established under the FSLA, courts will routinely impose liability for NYLL violations. See Guardado v. 13 Wall St., Inc., No. 15-CV-2482, 2016 WL 7480358, at *5 (E.D.N.Y. Dec. 2, 2016), adopted by, 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016). Therefore, since Plaintiff is considered an employee and Defendants are considered employers under the FLSA, they are also deemed to be so under the NYLL.

Additionally, the NYLL provides that employees shall receive "spread of hours pay," which entitles employees to an extra hour of pay (at the basic minimum hourly rate) for each day in which the interval between the beginning and the end of the workday is longer than twelve hours where: "(a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur." 12 N.Y.C.R.R. § 142-2.4. The spread of hours pay has been determined to only apply "to those employees making minimum wage and not to those making more than minimum wage." Shu Qin Xu v. Wai Mei Ho, 111 F. Supp. 3d 274, 281 (E.D.N.Y. 2015) (citation omitted).

Finally, the NYLL requires that an employer furnish each employee with a notice and acknowledgement of his or her wage rate upon hire, see N.Y. Labor Law § 195(1), as well as an accurate wage statement setting forth the hours worked, rate of pay, and total hours worked each pay period. See N.Y. Labor Law § 195(3). Plaintiff proffers that Defendants failed to provide

7

this information. See Am. Compl. ¶¶ 52, 108-09, 113. For this reason, Plaintiff has alleged

violations of Sections 195(1) and 195(3) of the NYLL.

II.    Damages

A.    Standard Applicable to a Damages Award Following Default Judgment

Unlike allegations pertaining to liability and proximate cause, allegations set forth

in connection with damages are not deemed admitted on account of a defendant's default. See,

e.g., Greyhound Exhibitgroup, 973 F.2d at 158; Olvera v. Los Taquitos Del Tio Inc., No. 15 Civ.

1262, 2015 WL 3650238, *1 (E.D.N.Y. June 11, 2015); Guaman v. Krill Contracting, Inc., No.

14-CV-4242, 2015 WL 3620364, at *2 (E.D.N.Y. June 9, 2015). Instead, a plaintiff seeking

damages from a defaulting defendant must prove entitlement to damages to a "reasonable

certainty." Olvera, 2015 WL 3620364, at *1. Reasonable certainty means that "damages may not

be merely speculative, possible or imaginary, but . . . directly traceable to the breach, not remote

or the result of other intervening causes." Credit Lyonnais Sec. (USA) Inc. v. Alcantara, 183

F.3d 151, 153 (2d Cir. 1999). While the party seeking damages is entitled to all reasonable

inferences from the evidence it offers, a court must "ensure that there is a basis for the damages

sought by a plaintiff before entering judgment in the amount demanded." Avelar v. Quiros, Inc.,

No. 13-CV-7017, 2015 WL 1247102, at *5 (E.D.N.Y. Mar. 18, 2015); Rodriguez v. Almighty

Cleaning, Inc., 784 F. Supp. 2d 114, 125 (E.D.N.Y. 2011) (citing Au Bon Pain Corp. v. Artect,

Inc., 653 F.2d 61, 65 (2d Cir.1981)).

The court determining damages has the discretion to hold an evidentiary hearing. See

Fed. R. Civ. P. 55(b)(2); see also Castellanos v. Deli Casagrande Corp., No. CV 11-245, 2013

WL 1207058, at *3 (E.D.N.Y. Mar. 7, 2013), adopted by, 2013 WL 1209311 (E.D.N.Y. Mar. 25,

2013). Such a hearing is not required, however, so long as documents submitted, such as detailed

affidavits, allow the court to conduct an inquiry sufficient to establish damages to a reasonable certainty. See Avelar, 2015 WL 1247102, at *7. Where there has been a default in a case alleging wage violations, the plaintiff's recollection and estimation of the hours worked are presumed correct and are often sufficient to support a damages award. See e.g., Rodriguez, 784 F. Supp. 2d at 126; Yin v. Kim, No. 07-CV-1236, 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008).

B.    Overtime Wages

Under the FLSA, an employee is entitled to recover "the amount of their unpaid minimum wages, [and/] or their unpaid overtime compensation." 29 U.S.C. § 216(b). Like the FLSA, the NYLL provides that an employee is entitled to recover unpaid minimum wages and overtime. See 12 N.Y.C.R.R. §§ 142-2.2-2.4. Unpaid overtime wages are calculated by multiplying the wage rate by 1.5 to determine the amount owed per hour for every hour over 40 hours worked.  See 29 U.S.C. § 207(a)(1). That amount is then multiplied by the number of hours of overtime worked per week to yield a sum of weeks of overtime pay owed. The totals for each week are then aggregated to calculate the total amount of overtime wages owed. See Mendez v. Casa Blanca Flowers, Ltd., No. 12-CV-5786, 2014 WL 4258943, at * 3 (E.D.N.Y. July 8, 2014), adopted by, 2014 WL 4258988 (E.D.N.Y. Aug. 27, 2014). "Even when wages exceed the minimum prescribed by Congress, [employers] must respect the statutory policy of requiring the employer to pay one and one-half times the regularly hourly rate for all hours actually worked in excess of [forty]." Avelar, 2015 WL 1247102, at *5 (quoting Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 42 (1944)) (alterations in original).

While both the federal and state statutory schemes place the burden of showing hours worked on the employee, see Avelar, 2015 WL 1247102, at *6, the employer is charged with maintaining accurate records of an employee's hours. See Guaman, 2015 WL 362036, at *7.

When the employer's records are inadequate, an employee may meet his burden of showing hours worked by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007).

C.    Liquidated Damages

Both federal and New York state law provide for enhanced damages equivalent to 100% of the total amount of the wages found to be due. As to such enhanced damages, federal law places the burden of establishing that liquidated damages should not be awarded on the employer. See Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 71 (2d Cir.1997). Under state law, willfulness is established where employers voluntarily underpay employees. See Moon v. Kwon, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002). These standards have been recognized to be essentially the same. See id. Where, as here, the employer defaults, an award of liquidated damages is appropriate. See Guaman, 2015 WL 3620364, at *10.

D.    Spread of Hours Damages

As noted, the NYLL provides that if the length of time between the beginning and end of an employee's workday (or the employee's "spread of hours") surpasses ten hours, the employer must pay the employee an additional hour of pay at the minimum wage. Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 500 (S.D.N.Y. 2017) (quoting 12 N.Y.C.R.R. § 146-1.6; see also Pineda v. Tokana Café Bar Restorant Inc., No. 16-CV-1155, 2017 WL 1194242, at *3 (S.D.N.Y. Mar. 30, 2017). "Spread of hours" includes "working time plus time off for meals plus intervals off duty." Neri v. Abi Japanese Rest., Inc., No. 20-CV-581, 2021 WL 6804252, at *9 (E.D.N.Y. Nov. 9, 2021) (quoting N.Y. Comp. Code R. & Regs. tit. 12 § 146-1.6). However, as set forth above, "[o]nly employees making the minimum wage rate, or less, are eligible for

spread-of-hours compensation." <u>Hernandez v. Delta Deli Market Inc.</u>, No. 18-CV-00375, 2019 WL 64375, at *7 (E.D.N.Y. Feb. 12, 2019). The spread of hours pay requirement does not apply "to those making more than minimum wage." <u>Shu Qin Xu</u>, 111 F. Supp. 3d at 281. Plaintiff contends that Defendants never paid him the spread of hours pay he was entitled to during the course of his employment.

E.    <u>Wage Theft Prevention Act Damages</u>

Under the NYLL, employers are required to furnish their employees with a notice and acknowledgement of the employee's wage rate at the time of hire. <u>See</u> N.Y. Labor Law § 195(1). Employers are also required to furnish their employees with accurate, specifically enumerated wage statements each pay period. <u>See</u> N.Y. Lab. Law § 195(3).  Plaintiff seeks to recover damages for Defendants' failure to provide accurate wage statements and annual wage notices as required by New York's Wage Theft Prevention Act ("WTPA"). As Plaintiff asserts he was never given a proper wage notice or a proper wage statement during the course of his employment, he is entitled to WTPA damages.

F.    <u>Facts Necessary to Plead a Claim for Wages and Overtime Damages</u>

In view of the fact that it is Plaintiff's burden to prove entitlement to damages to a "reasonable certainty," this Court must consider the nature of the proof required to prove such damages where, as here, a plaintiff seeks overtime damages. The Second Circuit has spoken explicitly as to the level of pleading required to state a claim for overtime wages. <u>See</u> <u>Lundy v. Catholic Health Sys. of Long Island Inc.</u>, 711 F.3d 106, 114 (2d Cir. 2013); <u>Nakahata v. New York–Presbyterian Healthcare Sys., Inc.</u>, 723 F.3d 192, 200 (2d Cir. 2013); <u>Dejesus v. HF Mgmt. Servs., LLC</u>, 726 F.3d 85, 88 (2d Cir. 2013).

Similar to the "reasonable certainty" standard required to prove entitlement to default damages, the Second Circuit has held that a plaintiff seeking to state a claim for overtime wages must plead facts sufficient to support a "reasonable inference" that he worked more than forty hours in a given week. See Dejesus, 726 F.3d at 90. While such hours need not be pled with exact "mathematical precision," a plaintiff seeking overtime wages is required to draw from his "memory and experience" when pleading hours worked. Id. Facts thus drawn from memory must provide "sufficient detail about the length and frequency" of hours worked so as to "support a reasonable inference that [plaintiff] worked more than forty hours in a given week." Id. The pleading of such factual context allows a plaintiff to "nudge [his] claim 'from conceivable to plausible." Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Lundy, 711 F.3d at 114 n.7 (stating that an approximation of overtime hours worked, while "not needed in all cases," may "help draw a plaintiff's claim closer to plausibility").

With these pleading standards in mind, the Court turns to consider the issues referred to this Court for report and recommendation, i.e., whether Plaintiff has sufficiently pled his claims under the FLSA and the NYLL, and, if so, the amount of damages to be awarded.

III.    Calculation of Plaintiff's Wage and Hour Damages

    A.    Unpaid Minimum Wage, Overtime and Liquidated Damages

Plaintiff's minimum wage and overtime claims are supported by the Amended Complaint and affirmation allegations referred to above. Plaintiff's affirmation recalls both the dates and hours worked. It also recalls his weekly wage. The Court has considered the allegations set forth above and holds that those allegations do, in fact, rise to the level of pleading required by the Second Circuit, and are therefore sufficient for this Court to make a reasonably specific determination as to damages.

12

With respect to whether Plaintiff was paid the minimum wage, Defendants are subject to New York's Hospitality Industry Wage Order, which requires Defendants to pay Plaintiff an hourly rate of pay. See N.Y. Comp. Codes R. & Regs. tit. 12 Part 146-2.5. Since Defendants paid Plaintiff by the day or month, and not by the hour, the Hospitality Industry Wage Order requires that "the employee's regular hourly rate of pay[] be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." Id. § 146-3.5. As to overtime wages, Plaintiff is entitled to 100% of all overtime wages owed.

Plaintiff states that, from June 1, 2014 to August 17, 2014, he worked one day per week for ten hours per day. (Am. Compl. ¶ 42; Gu Aff. ¶ 11.) During this time, Plaintiff was paid $80.00 per day, resulting in an hourly wage of $8.00 per hour. (Am. Compl. ¶ 47; Gu Aff. ¶ 15.) From August 18, 2016 to October 8, 2016, Plaintiff regularly worked six days per week – eleven hours per day for four days each week and twelve hours per day for two days each week. (Am. Compl. ¶ 43; Gu Aff. ¶ 12.) These shifts resulted in Plaintiff working sixty-eight hours per week for Defendants, twenty-eight of which should have been compensated at one and one-half times his regular rate of pay. (Am. Compl. ¶ 43; Gu Aff. ¶ 12.) During this time, Plaintiff was paid $1,800.00 per month, regardless of the number of hours he worked.  (Am. Compl. ¶ 48; Gu Aff. ¶ 16.) New York minimum wage rates for the period of Plaintiff's employment were $8.00 per hour for 2014, $8.75 per hour for 2015, $9.00 per hour for 2016, $11.00 per hour for 2017, and $13.00 per hour for 2018. See N.Y. Labor Law § 652. Taking into account the statutes of limitation under the FLSA and the NYLL, Plaintiff may recover unpaid overtime compensation for the work he performed for Defendants for his entire length of employment. He is also entitled

to recover the minimum wage rate for the time period that he worked, which is calculated as set forth above.

Therefore, the minimum wage and overtime pay due to Plaintiff is $54,854.92, as set forth below:

| Time Period | Number of Weeks | Hourly Rate of Pay | Minimum Wages Owed Per Week | Minimum Wages Due |
|---|---|---|---|---|
| 06/01/2014-12/31/2014 | 30.57 | $ 8.00 | $ 0.00 | $ 0.00 |
| 01/01/2015-12/31/2015 | 52 | $ 8.00 | $ 7.50 | $ 390.00 |
| 01/01/2016-08/17/2016 | 32.86 | $ 8.00 | $ 10.00 | $ 328.60 |
| 08/18/2016-12/31/2016 | 19.43 | $10.38 | $ 0.00 | $ 0.00 |
| 01/01/2017-12/31/2017 | 52 | $10.38 | $ 24.80 | $1,289.60 |
| 01/01/2018-10/08/2018 | 40.14 | $10.38 | $104.80 | $4,206.67 |

| Time Period | Number of Weeks | Hourly Rate of Pay | Overtime Owed per week | Overtime Wages Due |
|---|---|---|---|---|
| 06/01/2014-12/31/2014 | 30.57 | $ 8.00 | $ 0.00 | $ 0.00 |
| 01/01/2015-12/31/2015 | 52 | $ 8.00 | $ 0.00 | $ 0.00 |
| 01/01/2016-08/17/2016 | 32.86 | $ 8.00 | $ 0.00 | $ 0.00 |
| 08/18/2016-12/31/2016 | 19.43 | $10.38 | $435.96 | $ 8,470.70 |
| 01/01/2017-12/31/2017 | 52 | $10.38 | $435.96 | $22,669.92 |
| 01/01/2018-10/08/2018 | 40.14 | $10.38 | $435.96 | $17,499.43 |

B.    Spread of Hours Damages

Since Plaintiff worked more than ten hours per day, six days per week, during the latter course of his employment, as reflected in his Amended Complaint and his affirmation, he is entitled to spread of hours pay during the time period in which he was paid less than minimum wage. From June 1, 2014 to August 17, 2016, Plaintiff worked exactly ten hours per day and is, therefore, not entitled to spread of hours compensation. See Zabrodin v. Silk 222, Inc., No. 1:22-cv-7064, 2023 WL 8009319, at *12 n.7 (E.D.N.Y. Nov. 20, 2023) ("Under the NYLL, an employee is entitled to spread-of-hours premium only for days the employee worked more than

ten hours and not for days the employee worked <u>exactly</u> ten hours.") (citing cases) (emphasis in original). Similarly, from August 18, 2016 through the end of that year, Plaintiff was paid more than minimum wage and, therefore, not entitled to spread of hours compensation for that time period as well.

For 2017, however, Plaintiff should have been paid $11.00 per hour for eight hours per week, for fifty-two weeks, which amounts to $4,576.00. For 2018, the spread of hours pay owed to Plaintiff is $13.00 per hour for eight hours per week, for 40.14 weeks, for a total of $4,174.56. Adding the foregoing amounts together, this Court respectfully recommends that Plaintiff be awarded a total of $8,750.56. in spread of hours damages.

C.     <u>Liquidated Damages</u>

As stated above, both federal and New York state law provide for liquidated damages equivalent to 100% of the total amount of the wages found to be due. Accordingly, Plaintiff is entitled to liquidated damages in an amount equal to the minimum wage and overtime compensation owed, for an award of $63,605.48.

D.     <u>WTPA Damages</u>

Since February 27, 2015, the WTPA mandates that "[a]ny employee not provided [a wage] notice within ten business days following their first day of employment, 'may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." <u>Rodriguez</u>, 2018 WL 1335358, at *9 (quoting <u>Kim v. 511 E. 5th St., LLC</u>, 133 F. Supp. 3d 654, 661 (S.D.N.Y. 2015)) (first alteration in original); <u>see also</u> N.Y. Labor. L. § 198(1-b). Plaintiff states that he worked one day per week for a period of approximately 116 weeks from June 1, 2014 to August 17, 2016, and six days per week for a

period of approximately 112 weeks from August 18, 2016 to October 8, 2018, during which he never received written notice of his pay. (Am Compl. ¶¶ 42-43; Gu Aff. ¶¶ 11-12.) This amounts to approximately seven hundred eighty-eight days, which amounts to more than the maximum amount of damages permitted under the WPTA. Therefore, this Court recommends awarding Plaintiff the maximum allowable amount of damages of $5,000.00 for Defendants' record keeping violations, pursuant to Section 195(1) of the NYLL.

Moreover, since April 9, 2011, the WPTA also requires employers to provide employees, with every payment of wages, a statement that lists the dates of work covered by the payment of wages, the employee's and the employer's names, the address and phone number of the employer, the employee's rate of pay, "whether paid by the hour, shift, day, week, salary, piece, commission, or other," gross wages, deductions, allowances, if any, and net wages. N.Y. Labor L. § 195(3). "[T]he statement shall [also] include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." Id. Prior to February 27, 2015, "[t]he WPTA entitled employees to recover statutory damages for violations of the wage statement requirement of $100 per work week, not to exceed $2,500." Id. After February 27, 2015, the WPTA entitles a plaintiff to recover $250 for each work day that the violation occurred, not to exceed $5,000. See N.Y. Labor L. § 198(1-d). Here, Plaintiff states that Defendants did not provide him with wage statements or paystubs at any point during his employment. (Am. Compl. ¶ 52; Gu Aff. ¶¶ 19, 30.) Accordingly, this Court recommends awarding Plaintiff the statutory maximum of $5,000.00 for Defendants' violation of Section 195(3) of the NYLL.

E.      Out-of-Pocket Delivery Costs

The Amended Complaint also contains a cause of action for Defendants' failure to compensate Plaintiff for out-of-pocket costs, such as gasoline, insurance, maintenance and repairs, associated with the use of his personal vehicle in the delivery of Defendants' goods. (Am. Compl. ¶¶ 115-22.) Plaintiff also includes these costs in his Damages Calculation, seeking reimbursement for mileage at an estimated rate of 100 miles per day. (DE [63-5].) However, Plaintiff has not offered any evidence to support his claim that he drove 100 miles per day or incurred any out-of-pocket costs associated with his vehicle. Nor does his affidavit make any mention of such costs being incurred. Accordingly, this Court respectfully recommends that Plaintiff's request for out-of-pocket costs associated with the use of his vehicle be denied.

In summary, this Court respectfully recommends that Defendants be ordered to pay Plaintiff $54,854.92 for unpaid minimum and overtime wages, $8,750.56 in spread of hours damages, $63,605.48 in liquidated damages, and $10,000.00 for Wage Theft Prevention Act violations, for a total monetary award of $137,210.96.

IV.     Pre-Judgment Interest

Plaintiff seeks pre-judgment interest on damages awarded for his NYLL claims. "Prejudgment interest is compensatory in nature and is not available where a plaintiff successfully claims liquidated damages under the FLSA because the plaintiff is considered to have been appropriately compensated through the award of liquidated damages." Nam v. Ichiba Inc., No. 19-cv-1222, 2021 WL 878743, at *9 (E.D.N.Y. Mar. 9, 2021) (citing cases). "The NYLL, however, explicitly provides that a successful plaintiff should receive both liquidated damages and prejudgment interest." Id. (citing N.Y. Labor Law § 198(1-a)) (additional citations omitted). Accordingly, to avoid double recovery, courts calculate pre-judgment interest only on

the compensatory damages awarded under the NYLL, not on the liquidated damages. See id. (citation omitted). Here, Plaintiff may recover pre-judgment interest on his unpaid minimum and overtime wages, and his spread of hours pay, which, as discussed above, total $63,605.48.

Pre-judgment interest on NYLL damages is calculated at a rate of nine percent per annum. See N.Y. C.P.L.R. § 5004. In cases in which damages are "incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." Id. § 5001(b). "Courts have discretion in determining a reasonable date from which to award prejudgment interest, such as 'the earliest ascertainable date the cause of action existed,' or a reasonable intermediate date if damages were incurred at various times." Nam, 2021 WL 878743, at *9 (quoting Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011). Here, this Court recommends that Plaintiff be awarded pre-judgment interest from the date of his last day of employment – October 8, 2018 – through the date of judgment in this action.

Interest on Plaintiff's NYLL damages award accumulates at a rate of $15.68 per day (($63,605.48 x 9%)/365 days). Starting with Plaintiff's last day of employment, there are 2,075 days to the date of this Report and Recommendation. Accordingly, this Court recommends that Plaintiff be awarded $32,536.00 in pre-judgment interest, with additional interest to be calculated at a rate of $15.68 per day through the date of judgment herein.

V.      Post-Judgment Interest

Plaintiff should also be awarded post-judgment interest, pursuant to 28 U.S.C. § 1961, which must be applied to "any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961; see also Khurana, 2017 WL 1251102, at *17. Accordingly, this Court recommends awarding post-judgment interest, to be calculated based on the weekly average one-

year constant maturity Treasury yield for the week preceding the date on which judgment is entered. See 28 U.S.C. § 1961(a) ("[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."); see also Schipani v.McLeod, 541 F.3d 158, 165 (2d Cir. 2008) (holding that post-judgment interest is mandatory and calculated pursuant to federal statute).

VI.    Plaintiff's Motion for Attorney's Fees and Costs

Both the FLSA and the NYLL provide for the recovery of reasonable attorney's fees by successful plaintiffs. See 29 U.S.C. §216(b); N.Y. Labor L. §§198(1-a), (1-d). The statutes similarly allow prevailing plaintiffs to recover costs from defendants. See 29 U.S.C. §216(b); N.Y. Labor L. §663(1). Counsel seeking such awards bear the burden of supporting their claims of hours expended by submission of accurate, detailed and contemporaneous time records. See N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

When determining an award of attorney's fees, the "starting point" for calculating a "presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro–North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'") (quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008)). The Supreme Court has held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Perdue v. Kenny A. ex rel. Winn., 559 U.S. 542,

551 (2010). "The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" Id. at 553 (citation omitted); see also Arbor Hill Concerned Citizens Neighborhood Assoc., 522 F.3d at 184, 190-91.

The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits." Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983). Additionally, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012). This Circuit requires contemporaneous billing records for each attorney. See Scott v. City of New York, 643 F.3d 56, 57 (2d Cir. 2011).

Plaintiff seeks $54,050.50 in attorney's fees and $2,311.90 in costs and has submitted an affirmation from his attorney, dated February 28, 2024, as well as billing records. (DE 66].) Taken together, the affirmation of Plaintiff's counsel and the billing records submitted provide an itemization of time and services expended in this case, reflecting time spent and tasks performed, as well as costs incurred. The records reflect that Plaintiff's attorneys spent a total of 120.98 hours working on this case at billing rates of $550-$600 per hour for a partner, and $200-400 per hour for associates and the firm's Managing Clerk. (DE [66], [66-1].) The Court finds the hourly rates and the hours expended to be within the reasonable range. See Claud v. Brown Harris Stevens of the Hamptons, Inc., No. 2:18-cv-1930, 2024 WL 245261, at *3 (Jan. 23, 2024) (awarding Plaintiff's attorney an hourly rate of $550 because, inter alia, "a rate of $550 per hour is consistent with the high-end of recent prevailing hourly rates used to calculate fee awards for

experienced litigators in this District"); HVT, Inc. v. Port Auth. of N.Y. & N.J., No. 15-cv-5867, 2023 WL 5441898, at *5 (E.D.N.Y. Aug. 22, 2023), adopted by, 2023 WL 6035673 (E.D.N.Y. Sept. 15. 2023) (awarding Plaintiff's lawyer with thirty years of experience an hourly rate of $630 per hour); Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, No. 10-cv-2262, 2019 WL 2870721, at *10 (E.D.N.Y. June 18, 2019), adopted by, 2019 WL 2869150 (E.D.N.Y. July 3, 2019) (awarding Plaintiff's lawyer in a civil rights case with a more than fifty-year career litigating similar cases an hourly rate of $600 per hour); Trustees v. Cali Enter., Inc., No. 18-CV-3556, 2019 WL 2076784, at *6 (E.D.N.Y. May 10, 2019) (noting propriety of award of between $200 and $325 per hour for junior associates litigating ERISA collection matter);  National Environmental Safety Co., Inc. v. Katz, No. 18-cv-2161, 2019 WL 1994049, at *2 (E.D.N.Y. May 6, 2019) (awarding $500-$600 hourly rate to partners and $300 hourly rate for associates litigating breach of contract case); Quintanilla v. Good Eats Meal Plan Corp., No. 18-CV-4350, 2019 WL 1936731, at *2 (E.D.N.Y. May 1, 2019) (noting that courts generally award hourly rates ranging from $300-$400 for experienced attorneys litigating wage disputes); Reiter v. Maxi-Aids, Inc., No. 14 CV 3712, 2019 WL 1641306, at *4 (E.D.N.Y. Apr. 16, 2019) (noting propriety of awarding up to $450 per hour for partners and up to $325 per hour for associates in fee shifting cases); Schwartz v. United Staes Drug Enforcement Admin., No. 13-cv-5004, 2019 WL 1299192, at *9 (E.D.N.Y. Mar. 1, 2019), adopted by, 2019 WL 1299660 (E.D.N.Y. Mar. 21, 2019) (awarding $500 per hour to partner litigating FOIA litigation, and listing awards of between $500 and $655 per hour for partners handling complex litigation). Therefore, this Court finds it reasonable to grant the requested attorney's fees in the amount of $54,050.50.

Finally, as to costs, Plaintiff seeks a total of $2,311.90 in litigation expenses. These expenses include the Court filing fee, service of process fees, postage fees, a publication notice and interpreter's costs at depositions. Like the other amounts sought, the costs requested are reasonable and supported by the record. Accordingly, this Court respectfully recommends that Plaintiff be awarded costs in the amount requested of $2,311.90.

## RECOMMENDATION

For the reasons stated herein, it is respectfully recommended that Plaintiff's motion for default judgment be granted in part and denied in part and that damages be awarded as follows: (1) unpaid minimum wage and overtime compensation, pursuant to both the FLSA and the NYLL, in the amount of $54,854.92; (2) spread of hours damages, pursuant to the NYLL, in the amount of $8,750.56; (3) liquidated damages, pursuant to both the FLSA and the NYLL, in the amount of $63,605.48; (4) $10,000.00 in damages for violations of the WPTA; (5) pre-judgment interest through the date of this Report and Recommendation in the amount of $32,536.00, with additional interest to be calculated at a rate of $15.68 per day through the date of judgment herein; and, (6) post-judgment interest, to be calculated by the Clerk of the Court, pursuant to 28 U.S.C. § 1961.

The Court further recommends that Plaintiff's motion for attorney's fees and costs be granted and that he be awarded $54,050.50 in attorney's fees, as well as costs in the amount of $2,311.90, for a total monetary award of $226,109.36, plus additional interest.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court is directing Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendants at their last known

address(es), and to file proof of service on the docket sheet, by June 18, 2024. Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

**SO ORDERED.**

Dated: Central Islip, New York
June 13, 2024

 /s/ Anne Y. Shields
ANNE Y. SHIELDS
United States Magistrate Judge